UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

JACQUELYN SMALLISH,

    Plaintiff,                                 Case No. 12-11457
                                             Honorable Victoria A. Roberts

v.

MEIJER, INC.,

    Defendant.
_____/

## ORDER DENYING PLAINTIFF'S MOTION
## TO VACATE ARBITRATION AWARD [Doc. 27]

**I.    INTRODUCTION**

Jacquelyn Smallish ("Smallish") filed this employment discrimination case in March 2012 against Meijer, Inc. Shortly after Meijer appeared, the case was dismissed without prejudice based on a binding arbitration agreement. The case later proceeded to arbitration, resulting in a final award against Smallish.

On October 20, 2016, Smallish moved to vacate the arbitration award pursuant to 9 U.S.C. § 10 of the Federal Arbitration Act. [Doc. 27]. This motion is before the Court.

For the reasons below, Smallish's motion to vacate [Doc. 27] is **DENIED**.

**II.    PROCEDURAL BACKGROUND**

After appearing in this case, Meijer moved to compel arbitration based on its Dispute Resolution Policy ("DRP"), which covered Smallish and required that all employment disputes be submitted to binding arbitration. On September 17, 2012, the Court granted Meijer's motion to compel arbitration and dismissed the case without prejudice.

On September 19, 2012, Meijer sent Smallish a letter setting forth the procedure for selecting an arbitrator. Smallish did not respond to the letter or attempt to initiate arbitration until over three years later, in March 2016, when her attorney mailed Meijer a letter incorporating the claims in the March 2012 complaint and demanding arbitration.

Meijer initially refused Smallish's arbitration demand, arguing her claims were time barred. However, on April 6, 2016, Meijer sent Smallish a letter agreeing to arbitration and acknowledging that its statute of limitations defense would be resolved in that forum. Meijer also informed Smallish that the next step was to select the arbitrator.

Under Meijer's DRP, Meijer provides a claimant with a list of approved arbitrators. If the claimant rejects Meijer's list, the American Arbitration Association (the "AAA") will provide a panel of arbitrators from its Employment Dispute Resolution Roster. Regardless of the list used, the arbitrator is selected by the parties alternately striking arbitrators until only one arbitrator remains.

Meijer attached a list of proposed arbitrators to its April 6 letter. That list included Donald Gasiorek ("Gasiorek"), a partner at the firm Gasiorek, Morgan, Greco, McCauley & Kotzian, P.C. ("GMGMK"). On April 14, 2016, Smallish's counsel responded, "I shall review your proposed arbitrators with my client and advise." [Doc. 29-2, PgID 461]. Smallish rejected the list provided by Meijer; the AAA provided a panel of arbitrators. However, after reviewing that list of arbitrators, Smallish's counsel informed Meijer that he would stipulate to Gasiorek from the original list. Meijer agreed with Smallish's request. The parties proceeded with Gasiorek as the arbitrator without using the AAA strike process.

2

Once arbitration was underway, Arbitrator Gasiorek held an initial scheduling conference with the parties. During the conference, Meijer raised its statute of limitations defense, and the parties agreed to a briefing schedule. Meijer filed its motion for summary judgment – arguing Smallish's claims were time barred – on June 3, 2016. Arbitrator Gasiorek held a hearing on the motion on August 2, during which Smallish sought and received 30 days to submit a brief on a matter raised during the hearing.

On September 23, 2016, Arbitrator Gasiorek issued an Opinion and Order granting Meijer's motion, finding that Smallish's claims were untimely.

One week later, on September 30, Smallish's counsel sent Gasiorek a letter alleging he had a conflict of interest and requesting that he vacate the opinion and order granting Meijer's motion:

> After you rendered your opinion, I forwarded the same to Ms. Smallish. She and her husband performed a research task related to you. I regret to inform you that I have discovered that you and other personnel in your office were in contact with Ms. Smallish regarding this case in 2011. I have attached the three (3) emails which I have received dated December 20, 2011, and December 21, 2011, which clearly demonstrate that you and your office had discussions and information regarding the case at that time.
>
> I request that you search your email system to obtain any other communications you may have had regarding this matter during December[] 2011 and January 2012. It appears that any proceedings you may have instituted to perform a conflicts check prior to receiving your appointment as Arbitrator were not sufficient.
>
> \* \* \* \* \*
>
> The knowledge and conflict of interest present in this matter by your office was not disclosed. It was certainly not disclosed to me, and had I known of the information and opinion your office had previously expressed regarding this case, I would not have permitted you to serve.

> I ask that you voluntarily vacate your Judgment and Award by October 6, 2016. Lacking that, I will be required to file a motion in the US District Court to vacate the award pursuant to 9 [U.S.C. §] 10.

[Doc. 27-12, PgID 321-22]. The emails referred to in the letter set forth the following:

> Email #1: An email from Smallish to Gasiorek and Sam Morgan ("Morgan"), a partner at GMGMK, stating that a friend referred her to them, asking for legal representation, and generally explaining the facts regarding her potential claims against Meijer for discrimination, harassment and wrongful termination. [*Id.*, PgID 325].
>
> Email #2: A response from Morgan to Smallish and Gasiorek stating, "Sorry. I am not interested in taking on your case. I have litigated with Meijer before. They are very thorough with their security investigations. Plus, you really have no evidence that someone set you up. Your suspicion of a set-up, coupled with your denial is really not sufficient. Maybe one of the other lawyers [you are] offering your case to may feel differently. I wish you good luck." [*Id.*, PgID 323].
>
> Email #3: A reply from Smallish to Morgan thanking him for responding and asking a few follow-up questions, which went unanswered. [*Id.*, PgID 324].

On October 19, 2016, Arbitrator Gasiorek entered an opinion regarding Smallish's letter stating that: (1) he did not personally respond to Smallish's email; (2) a search of his computer system returned no results showing that he communicated with Smallish; (3) a check of his firm's filing system indicated that no file was ever opened related to Smallish's claims against Meijer; (4) he did not have the authority to rule on Smallish's conflict of interest claim; and (5) she would have to raise the claim in this Court. [Doc. 29-2, PgID 484-86]. Gasiorek also responded to an email from Smallish's counsel stating that he has "not located any documents relative to any contact with Ms. Smallish other than those [referenced in the letter]." [*Id.*, PgID 488].

4

On October 20, 2016, Smallish filed the underlying motion to vacate the arbitration award. The motion is fully briefed.

## III. ANALYSIS

"The Federal Arbitration Act ("FAA") expresses a presumption that arbitration awards will be confirmed." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 643 (6th Cir. 2005). The Court's review of an arbitrator's decision is "very narrow; one of the narrowest standards of judicial review in all of American jurisprudence." *Id.* (citation omitted). The Court may only vacate an arbitration award in limited circumstances. *Id.* Those circumstances include:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). Smallish says the arbitration award should be vacated under subsections (1), (2) and (3) of § 10(a). The Court disagrees.

### A. Corruption, Fraud, or Undue Means

Smallish quotes the text of 9 U.S.C. § 10(a) in her motion and summarily states, *in the conclusion*, that the arbitration award was procured by corruption, fraud or undue means because the December 2011 emails show bias and created a conflict of interest, and because Arbitrator Gasiorek failed to investigate and disclose the alleged conflict of

5

interest created by the emails. Beyond quoting the statute and summarily stating that the arbitration award was procured by corruption, fraud or undue means, Smallish fails to argue how the award violates § 10(a)(1).

Smallish's challenge of the arbitration award under § 10(a)(1) is waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.") (citation omitted).

### B. Misconduct in Refusing to Postpone the Hearing or Refusing to Hear Pertinent and Material Evidence to the Controversy

Smallish says Gasiorek was guilty of misconduct under § 10(a)(3) because he "took no evidence in this case" and "decided [it] as a Motion, and not as a trial." However, Smallish does not direct the Court to any evidence – let alone material evidence – that Gasiorek refused to hear. As with her suggestion of corruption, fraud or undue means, this argument fails because Smallish fails to develop it. *See McPherson*, 125 F.3d at 995-96.

Moreover, the Court finds that Gasiorek's treatment of Meijer's preliminary motion was reasonable and appropriate, since Meijer's grounds for dismissal of Smallish's claims were based on the statute of limitations, and the timeline and procedural history were clear. Smallish's implication that Gasiorek should have held a trial on the time-barred claims is nonsensical.

### C. Evident Partiality and Misbehavior in Failing to Disclose

Smallish's remaining claims are that: (1) Morgan's December 20, 2011 email shows evident partiality under § 10(a)(2) because it sets forth Gasiorek's and the firm's

6

opinion regarding the validity of her claims, and the arbitration award merely confirmed his preconceived notion; and (2) Gasiorek's failure to investigate and disclose the conflict of interest created by the emails was "misbehavior" that prejudiced her under § 10(a)(3).

To establish evident partiality in the Sixth Circuit, the moving party must show that "a reasonable person would *have to conclude* that an arbitrator was partial to one party to the arbitration." *Thomas Kinkade Co. v. White*, 711 F.3d 719, 723-24 (6th Cir. 2013) (citation omitted and emphasis added). "This standard requires a showing greater than an 'appearance of bias,' but less than 'actual bias.'" *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 329 (6th Cir. 1998) (citation omitted). "The alleged partiality must be direct, definite, and capable of demonstration, and 'the party asserting evident partiality must establish specific facts that indicate improper motives on the part of the arbitrator.'" *Id.* (citation omitted). Smallish fails to satisfy this standard on several grounds.

Smallish's entire claim of evident partiality relies on three emails: an unsolicited email from Smallish to Gasiorek and Morgan; a short email from Morgan stating that *he* was not interested in taking the case; and a reply from Smallish that is entirely irrelevant. Gasiorek never responded to Smallish's email or communicated with her in any way, and there is no evidence that he even read the unsolicited email. His search showed that he did not create any documents related to Smallish's claim against Meijer, and his firm did not open a file on the matter. At most, Gasiorek's involvement was passive and indirect.

Smallish's claim that Morgan's response to her email shows that Gasiorek had a preconceived notion regarding the merits of her claims has no support. Morgan's email says that *he* (i.e., "I am not. . .") was not interested in taking her case based on his opinions; Smallish points to no evidence showing that Morgan's thoughts were the same as Gasiorek. Even if Gasiorek read the emails in December 2011 when they were sent, there is no evidence that he had recollection of the emails that predated his opinion and order by nearly five years. Even if he had knowledge of the emails, Morgan merely said that he thought her claim was substantively weak. On the other hand, Gasiorek dismissed Smallish's claims procedurally as being time-barred, and never considered the substantive merits of her claims. Smallish fails to undermine this finding in even the slightest way.

Most importantly, Smallish fails to "establish specific facts that indicate improper motives on the part of [Gasiorek]." *Andersons*, 166 F.3d at 329 (citation omitted). Smallish does not allege that Gasiorek had any personal interest in the outcome of the arbitration or any reason to find for Meijer rather than her, and there is no evidence suggesting he had a vested interest in the dispute between Smallish and Meijer. Smallish, therefore, cannot establish evident partiality under the Sixth Circuit's standard.

Apparently aware of this, Smallish instead relies on *Schmitz v. Zilveti*, 20 F.3d 1043 (9th Cir.1994), for the proposition that the mere fact of nondisclosure establishes an *appearance of bias* and, hence, evident partiality. This is misguided and contrary to Sixth Circuit precedent. *See Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 429 F.3d 640, 647 n. 5 (6th Cir. 2005) (rejecting *Schmitz* upon finding that its endorsement of the appearance of bias and/or reasonable impression of bias standards conflict with

*Apperson*); *Apperson v. Fleet Carrier Corp.*, 879 F.2d 1344, 1358 (6th Cir. 1989) (rejecting the "appearance of bias" standard and holding that a party seeking to "invalidate an arbitration award on the grounds of bias . . . must show that 'a reasonable person would have to conclude that an arbitrator was partial' to the other party to the arbitration").

Moreover, although an arbitrator has a duty to disclose material relationships, there is no obligation to disclose if the relationship is trivial or insubstantial. *See Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 306-07 (6th Cir. 2008) (holding that courts should uphold "awards when arbitrators fail to disclose insubstantial relationships" and that "there is no duty to disclose if the relationship is trivial"). Gasiorek did not have any *personal* relationship with Smallish, and to the extent Morgan's "relationship" with Smallish is attributed to Gasiorek, as partners, it was trivial and insubstantial. Smallish's unsolicited email and Morgan's short response declining to represent her did not constitute a consultation, and did not create an attorney-client relationship. *See* Mich. Eth. Op. RI-154 (Feb 1, 1993) (finding that "no client-lawyer relationship was established" as a result of a consultation because no agreement was reached between a prospective client and attorney for legal representation and only general information was shared). Therefore, to the extent any "relationship" was established as a result of the emails, Gasiorek did not have an obligation to disclose because the relationship was trivial and insubstantial. *See Uhl*, 512 F.3d at 307.

That Gasiorek had no duty to disclose is especially true here, considering the fact that Smallish already had knowledge of the information that she alleges created a conflict – i.e., the email communications *she initiated*. Despite that knowledge, she still

9

selected Gasiorek as the arbitrator. [*See* Doc. 29-2, PgID 461 (an April 14, 2016 email from Smallish's counsel to Meijer stating, "I shall review your proposed arbitrators with my client and advise")]. Requiring an attorney to disclose an unsolicited email and short response from his partner from over four years prior – which did not result in a consultation or any type of attorney-client relationship, and where the person who subsequently raises the conflict of interest is the one who actually sent the unsolicited email – would be unwise and unduly burdensome on attorneys, especially considering a person could send a generic email to all attorneys in a particular field to create so-called conflicts.

Because Smallish cannot establish that "a reasonable person would have to conclude that [Gasiorek] was partial to [Meijer]," her evident partiality argument fails. *See Thomas Kinkade*, 711 F.3d at 723-24.

Moreover, because Gasiorek had no duty to disclose, Smallish's argument that his failure to investigate and disclose constituted misbehavior under § 10(a)(3) similarly fails. Her § 10(a)(3) "misbehavior" argument also fails because she relies on conclusory statements and does not provide meaningful and developed arguments with support. *See McPherson*, 125 F.3d at 995-96.

### D. Smallish Waived Her Claims

Finally, the Court agrees with Meijer that the fact that Smallish raised the alleged conflict of interest to her attorney on September 26, 2016, just three days after Arbitrator Gasiorek issued his order, is highly suspicious. Even if Smallish could establish a reason to vacate the arbitration award under 9 U.S.C. § 10, the result would not change.

10

Despite having knowledge of the December 2011 emails, Smallish did not raise the alleged conflict until after the award was issued. Based on her lack of diligence, she waived the right to raise her claims. *See Stone v. Bear, Stearns & Co.*, 872 F. Supp. 2d 435, 439 (E.D. Pa. 2012) ("Finally, even if Stone could show proper grounds for vacatur, he waived any failure-to-disclose-based challenge to the award because he failed to investigate the arbitrators as diligently before the arbitration as he did after he lost. In this respect, Stone's admitted actions show him to be the quintessential sore loser improperly seeking a second bite at the apple.").

## IV. CONCLUSION

Smallish's motion to vacate the arbitration award [Doc. 27] is **DENIED** and the arbitration award is **CONFIRMED**.

**IT IS ORDERED**.

                                        S/Victoria A. Roberts
                                        Victoria A. Roberts
                                        United States District Judge

Dated: May 8, 2017

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on May 8, 2017.

s/Linda Vertriest
Deputy Clerk